Case No. 23-50651

---

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Derek Hall,

Plaintiff - Appellant

vs.

UiPath, Incorporated,

Defendant - Appellee

---

On Appeal from the United States District Court, Western District of Texas
*Hall v Uipath*; Case No.: 1:21-CV-728

---

**APPELLANT'S BRIEF**

---

Counsel for Appellant
JOHN F. MELTON
THE MELTON LAW FIRM, PLLC
925 South Capital of Texas Highway, Suite B225
Austin, Texas 78746
jmelton@jfmeltonlaw.com
Telephone: 512/330-0017

## CERTIFICATE OF INTERESTED PERSONS/
## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellant: | Counsel for Plaintiff-Appellant: |
|---|---|
| Derek Hall | JOHN F. MELTON<br>THE MELTON LAW FIRM, P.L.L.C.<br>925 South Capital of Texas Highway, Suite B225<br>Austin, Texas 78746 |

| Defendants-Appellees: | Counsel for Defendant-Appellee: |
|---|---|
| UiPath, Incorporated | Eric L. Vinson<br>Kelli Fuqua<br>LITTLER MENDELSON, P.C.<br>100 Congress Avenue, Suite 1400<br>Austin, Texas 78701 |

The Melton Law Firm, P.L.L.C.
925 South Capital of Texas Highway, #B225
Austin, Texas 78746
(512) 330-0017 Telephone

*/s/ John F. Melton*
John F. Melton
Jmelton@jfmeltonlaw.com
State Bar No. 24013155
ATTORNEY FOR APPELLANT

ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument in this case. This is an appeal from the lower court's decision granting Appellee's Motion for Summary Judgment.  As such the matter is factually intensive and appellant believes oral argument would be beneficial.

# TABLE OF CONTENTS

I.     STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Course Of Proceedings And Disposition Below . . . . . . . . . . . . . . . 1

     B.   Statement Of Standard For Review . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   The district court erred in granting summary judgment . . . . . . . . . . . . . . . . . . . . . . 4

     C.   Each case must be evaluated on its own merits . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     D.   Timing can establish causal connection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     E.   Circumstantial evidence can establish causal connection and pretext.12

     F.   Appellant has set forth sufficient facts to establish a causal link between his age discrimination complaint with Appellee and his later termination from Accelirate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.   CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . 22

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                              **Page**

*Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 277-78 (3rd Cir. 2001) ...............................................................................................8

*Allen v. Texas Dep't of Transp.*, 186 F. App'x 501, 503 (5th Cir. 2006)................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) .................................................................................................5

*Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir.1993) .................................5,8,14

*Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir.1982) ............................11

*Caudhill v. Farmland Indus.*, 919 F.2d 83 (8th Cir. 1999) ...................................10

*Charbonnages de France v. Smith*, 587 F.2d 406, 414 (4th Cir. 1979) .................6

*Cherry v. Menard, Inc.*, 101 F.Supp. 2d 1160, 1167 (N.D. Iowa 2000) .................8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...........................................................................................................5

*City of Austin Police Dept. v. Brown*, 96 S.W.3d 588, 596 (Tex. App.-Austin 2002, rev. dism'd) ...............................................................................................10

*EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir.1997). ...................................10

*Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir., 2014) ...........................................................................................................6

*Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir.2001)

*Fabela v. Socorro Independent School Dist.*, 329 F.3d 409, 417 n.9 (5th Cir. 2003) ...........................................................................................................12

*Gallagher v. Delaney*, 139 F. 3d 338, 343-44(2nd Cir. 1998) ...............................7

*Gee v. Principi*, 289 F.3d 342, 346-347 n.3 (5th Cir. 2002) ....................................12

*Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3rd Cir. 2000) ..7

*Grace v. Potter*, 2006 WL 1207735, at *3 n.13 (S.D. Tex. May 3, 2006)

*Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir.1997)

*Hunt v. Cromartie*, 525 U.S. 541, 549, 551-52 (1999) ...........................................6

*Hillig v. Rumself*, 381 F.3d 1028, 1033-34 (10th Cir.2004) ....................................10

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) .............6

*Johnson v. U. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) ...........................8

*Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2nd Cir.2005) ...........10

*Leffel v. Valley Financial Services*, 113 F.3d 787, 793 (7th Cir. 1997), *cert. denied*, 522 U.S. 968 (1997) ................................................................................................11

*Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985) .............................7

*Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 939-940 (3d Cir. 1997). ..................................................................................................................11

*Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 558 (7th Cir.2008) ......................10

*McCoy v. City of Shreveport*, 492 F.3d 551, 561 n. 28 (5th Cir.2007)...............5,9,14

*Nichols v. Loral Vought Systems, Corp.*, 81 F.3d 38, 41 (5th Cir.1996) ...............4,8,13

*Pittman v. Collin County, Texas,* 2010 WL 1330752 at *5 (E.D.Tex. Mar. 30, 2010) (Schell, J.) ..............................................................................................................12

*Rasco v. Austin Indep. Sch. Dist.*, 2007 WL 1390605, at *8 (W.D.Tex. May 8, 2007) ..................................................................................................................10

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 845 (1997) ..........10,21

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013) ............5

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) ..........6

*Stewart v. Rutgers University*, 120 F.3d 426, 431 (3rd Cir. 1997) ........................7

*Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir.1997) .....................................5,8,12,13

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) ....................................11

*Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708, 714 (W.D.Tex.2008)..........5,13

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S.248, 253 (1981) ...........4,8,13

*United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) .7

*Valderaz v. Lubbock Cty. Hosp. Dist.*, 611 F. App'x 816, 820 (5th Cir. 2015 (per curium) ...............................................................................................................8

*Zysk v. FFE Minerals, USA, Inc. et al.*, Civ. Action No. 00-5874, 2001 U.S. Dist. LEXIS 20914 (E.D. Pa. Dec. 15, 2001), *6-7

# I.     STATEMENT OF JURISDICTION

The appeal is from entry of a final judgment on all claims and parties. Jurisdiction exists under 28 U.S.C. § 1291.

# II.     STATEMENT OF ISSUES

Issue 1:     Whether the district court erred in granting summary judgment in favor of Appellee on Appellants retaliation claim under the Age Discrimination in Employment Act ("ADA").

# III.     STATEMENT OF CASE

## A.     Course Of Proceedings And Disposition Below

Hall filed his Original Complaint against UiPath on August 19, 2021, alleging (1) retaliation under the Age Discrimination in Employment Act ("ADEA") and (2) tortious interference with contractual relations. ROA.8. UiPath filed a Motion to Dismiss on September 9, 2021. ROA.23, but the Motion was denied in light of Hall's First Amended Complaint, which was filed on September 30, 2021. ROA.33. UiPath moved to dismiss for the second time on October 14, 2021 ROA.41, Hall filed a Response in Opposition on October 28, 2021 ROA.52, and UiPath filed a Reply on November 3, 2021 ROA.67. This Court held a hearing on the second Motion to Dismiss on February 24, 2022, and ultimately denied the Motion without prejudice. ROA.3. UiPath filed an Answer to Hall's First Amended Complaint on March 15,

1

2022. ROA.82. UiPath filed the instant Motion for Summary Judgment on February 17, 2023 ROA.163, Hall filed a Response in Opposition on March 15, 2023 ROA.370, and UiPath filed a Reply on March 29, 2023 ROA.389. Hall filed a Motion for Hearing on UiPath's Motion for Summary Judgment on June 23, 2023 ROA.400, and UiPath filed a Response on July 7, 2023 ROA.402. The trial court granted summary judgment on August 8, 2023. ROA.405. This appeal followed.

## B.     Statement of Standard For Review

This circuit reviews de novo a district court's grant of summary judgment

## IV.     SUMMARY OF ARGUMENT

The trial court erred in granting summary judgment in this case. Appellant established a prima facie case for retaliation under the ADA. Appellee conceded the first two elements but argued in its motion for summary judgment that Appellant had failed to establish the third element of his prima facie case, namely whether or not there was a causal link between the protected activity and Appellant's subsequent termination by Accelirate. This argument and the trial court's decision to grant summary judgment were not correct and this case should be remanded to the trial court for a jury trial on the merits.

2

## V.    ARGUMENT

### A.    Statement of Facts

Mr. Hall was employed by UiPath from November, 2018 until his termination on September 23, 2019 which followed an age discrimination and harassment claim made by Mr. Hall against his supervisor at the time, Carmel Smith. ROA.8-13, 378-79. Following his termination, Mr. Hall began employment with Accelirate, Inc. in late November, 2019. Accelirate is a top 10 partner for UiPath in the United States. Accelirate was  a perfect fit for Mr. Hall as he had already developed relationships with Accelirate's executive management team and its sales team in the Central and Western United States, while also mainstring the relationships he had previously developed with those at  UiPath. ROA.8-13, 378-79.

Mr. Hall's start at Accelirate went well. He was well received and there were absolutely no complaints regarding his work. At the company Christmas party on Saturday, December 14, 2019 in Miami he was introduced as the Vice President of Sales to the entire company. ROA.378-79.

The first day back to work after the Christmas party was December 16, 2019 and everything was business as usual for Mr. Hall. He corresponded multiple times with his manager, Matt Gallo, and no mention of any issues were made. However, on the afternoon of December 17, 2019 Mr. Hall received a call from Mr. Gallo

3

informing his that his services were no longer needed and that December 17, 2019 would be his last day of employment with Accelirate. When Mr. Hall inquired as to why he was being terminated Mr. Gallo informed him that he had received text or email messages from UiPath and that Mr. Gallo informed Mr. Hall that "it was not going to work." Mr. Gallo did not state who at UiPath had contacted him, but it is clear that someone from UiPath did so and Mr. Hall believed it was likely Carmel Smith. ROA. 8-13, 378-79

This belief was confirmed in the discovery process that it was in fact Carmel Smith who sent disparaging text messages about Mr. Hall to Accelirate on the same day that Accelerate terminated Mr. Hall's employment. ROA.280-287. Furthermore, UiPath represents about 90% of all Accelirate's consulting revenue, which gave Accelirate a reason to not aggravate UiPath by employing Mr. Hall in any capacity. ROA.8-13, 378-79.

**B.    The district court erred in granting summary judgment**

**III. Summary Judgment Standard in Employment Discrimination Cases**

Defendant argues in its motion for summary judgment that Plaintiff cannot establish a prima facie case for retaliation. The prima facie burden is not onerous and the plaintiff must make only a minimal showing. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S.248, 253 (1981); *Nichols v. Loral Vought Systems, Corp.*,

81 F.3d 38, 41 (5ᵗʰ Cir.1996).  "[E]stablishing a causal link is not an onerous burden." *Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708, 714 (W.D.Tex.2008).  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5ᵗʰ Cir.1997) (citing *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5ᵗʰ Cir.1993)); *McCoy v. City of Shreveport*, 492 F.3d 551, 561 n. 28 (5ᵗʰ Cir.2007).

Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists when the " 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party succeeds, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *See Celotex.* at 324, 106 S.Ct. 2548. The court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence.". *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir., 2014).

Even when the underlying facts are not in dispute "motivation is itself a factual question" that is subject to conflicting inferences and usually cannot be decided on summary judgment. *Hunt v. Cromartie*, 525 U.S. 541, 549, 551-52 (1999).

When an employment dispute depends on the employer's motive or state of mind, summary judgment is not appropriate. As the Fifth Circuit noted in *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991),

> This is so because it is particularly difficult for the nonmoving party to challenge the "self-serving testimony" of the moving party without the benefit of trial accessories, namely cross-examination."

"[S]ummary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of [a] claim." *Charbonnages de France v. Smith*, 587 F.2d 406, 414 (4th Cir. 1979). Resolution of questions of intent depend on credibility determinations which must be reserved for trial. *Ross v. Communications Satellite*

*Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). Thus, courts must take special care in discrimination cases where the critical issue is discriminatory motive or intent. *See Ross*. at 364.

Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain. See *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"), thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. See *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a prima facie case has been established).

The requirements that the court should view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor are to be applied with added rigor in employment cases, where intent and credibility are crucial issues. See e.g. *Stewart v. Rutgers University*, 120 F.3d 426, 431 (3rd Cir. 1997). See also, *Zysk v. FFE Minerals, USA, Inc. et al.*, Civ. Action No. 00-5874,

2001 U.S. Dist. LEXIS 20914 (E.D. Pa. Dec. 15, 2001), *6-7, citing *Goosby v. Johnson & Johnson Medical, Inc*., 228 F.3d 313, 321 (3rd Cir. 2000); *Gallagher v. Delaney*, 139 F. 3d 338, 343-44(2nd Cir. 1998); *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 277-78 (3rd Cir. 2001); *Johnson v. U. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); *Cherry v. Menard, Inc.*, 101 F.Supp. 2d 1160, 1167 (N.D. Iowa 2000) (collecting cases holding that summary judgment should seldom be used in employment cases)

## I. <u>Prima facie case of retaliation</u>

To establish a prima facie case of retaliation, a Plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See Valderaz v. Lubbock Cty. Hosp. Dist*., 611 F. App'x 816, 820 (5th Cir. 2015 (per curium).

The prima facie burden is not onerous and the plaintiff must make only a minimal showing. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S.248, 253 (1981); *Nichols v. Loral Vought Systems, Corp*., 81 F.3d 38, 41 (5th Cir.1996). "[E]stablishing a causal link is not an onerous burden." *Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708, 714 (W.D.Tex.2008). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal

connection' required to make out a prima facie case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir.1997) (citing *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir.1993)); *McCoy v. City of Shreveport*, 492 F.3d 551, 561 n. 28 (5th Cir.2007).

The trial court granted summary judgment on the third element of Appellant's prima facie case. Appellee conceded that Mr. Hall had set forth sufficient facts to establish the first two elements and the trial court agreed. Nevertheless, because this is not a typical retaliation case since it involves post-termination conduct, and it provides clarity to the third element, Appellant will elaborate further on them.

a.    <u>Appellant engaged in statutorily protected activity</u>

Appellant Derek Hall made an age discrimination complaint against Appellee on August 29, 2019 of which Carmel Smith was aware. ROA.188-89. Appellee terminated him on September 23, 2019, only three and a half weeks after he made the age discrimination complaint. ROA378-79.

b.    <u>Appellant suffered an adverse employment action when Appellee gave him a negative reference and was terminated by Accelirate.</u>

It is well established under federal law that a false or negative employment reference may qualify as an adverse employment action. "Certainly, a former employee can sue a former employer for post-employment retaliation such as giving

9

a bad reference." *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); see also *Caudhill v. Farmland Indus*., 919 F.2d 83 (8th Cir. 1999) (a person can sue a former employer for his termination by a subsequent employer if he can prove that the former employer caused his discharge for retaliatory purposes)."

"Several courts have held that a former employee...can state a valid Title VII retaliation claim based on being given negative references after engaging in protected activity." *Rasco v. Austin Indep. Sch. Dist.*, 2007 WL 1390605, at *8 (W.D.Tex. May 8, 20017; see *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 558 (7th Cir.2008); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2nd Cir.2005); *Hillig v. Rumself*, 381 F.3d 1028, 1033-34 (10th Cir.2004); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir.1997) ("There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent."); see also *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir.1997).

## C.  Each case must be evaluated on its own merits

There are no hard and fast requirements for establishing a prima facie case, and the "prima facie case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic." *City of Austin Police Dept. v. Brown*, 96 S.W.3d 588, 596 (Tex. App.-Austin 2002, rev. dism'd), *citing United States Postal*

*Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). Instead, "[t]he facts necessarily will vary and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 512 (2002) (Title VII), *quoting McDonnell Douglas*, 411 U.S. at 802 n.13. *See also Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir.1982) (§ 1981) ("[N]o single formulation of the prima facie evidence test may fairly be expected to capture the many guises in which discrimination may appear"); *Leffel v. Valley Financial Services*, 113 F.3d 787, 793 (7th Cir. 1997), *cert. denied*, 522 U.S. 968 (1997) (ADA) ("the nature of the proof giving rise to the requisite inference of discrimination cannot be reduced to a formula that will serve any and all discrimination cases"); *Grace v. Potter*, 2006 WL 1207735, at *3 n.13 (S.D. Tex. May 3, 2006) (Title VII) ("The components of a *McDonnell Douglas*-type prima facie case are variable, and do not apply to all discrimination cases across the board."). Nor does the fact that case law repeats a particular formulation mean that it is always required. *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 939-940 (3d Cir. 1997).

## D.    Timing can establish causal connection

Close timing between the protected activity and an adverse employment action against him may provide the 'causal connection' needed to make a case for

retaliation. *See Swanson v. Gen. Servs. Admin*., 110 F.3d 1180, 1188 (5th Cir.1997).

A time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes. *See Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir.2001). A showing of causal connection is not necessarily defeated by evidence that the employee engaged in protected activity for a period of time without adverse action, as long as some adverse action occurred close in time to protected activity. *See, e.g., Fabela v. Socorro Independent School Dist*., 329 F.3d 409, 417 n.9 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 346-347 n.3 (5th Cir. 2002).

## E.    Circumstantial evidence can establish causal connection and pretext

Additional circumstantial evidence that may be used to establish a causal link between an employee's legally protected activity and an employer's retaliation against the employee for engaging in that legally protected activity includes (but is not limited to): (1) knowledge of the protected activity of the decision maker, (2) expression of a negative attitude toward the employee's protected activity, (3) failure to follow company policies, (4) different treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for discharge was false. *See Pittman v. Collin County, Texas*, 2010 WL 1330752 at *5 (E.D.Tex. Mar. 30, 2010 (Schell, J.). These are examples, not elements of a claim.

Here, there is evidence that Carmel Smith knew of the protected activity, put him on a performance improvement plan one day after he made the discrimination complaint, gave Plaintiff only thirty days to meet impossible goals,  and then even failed to give Plaintiff 30 days to meet the impossible goals and terminated him before the 30 days were up.  ROA. 188-89, 378-79.  Therefore there are additional allegations which establish a causal connection that do not even involve timing since Ms. Smith knew of the discrimination complaint and failed to even give Plaintiff 30 days to meet impossible goals set out in the performance improvement plan.

**F.** **Appellant has set forth sufficient facts to establish a causal link between his age discrimination complaint with Appellee and his later termination from Accelirate**

It is important to note that even under the standard for summary judgment, the prima facie burden is not onerous and the Appellant must make only a minimal showing. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Nichols v. Loral Vought Systems, Corp.*, 81 F.3d 38, 41 (5th Cir.1996). "[E]stablishing a causal link is not an onerous burden." *Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708, 714 (W.D.Tex.2008). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. GSA*,

Case: 23-50651    Document: 35-1    Page: 21    Date Filed: 01/25/2024

110 F.3d 1180, 1188 (5th Cir.1997) (citing *Armstrong v. City of Dall*., 997 F.2d 62, 67 (5th Cir.1993)); *McCoy v. City of Shreveport*, 492 F.3d 551, 561 n. 28 (5th Cir.2007).

Evidence of a causal connection between the termination by Accelirate on December 17, 2019 and the making of the discrimination complaint includes the fact that the very same day Carmel Smith sent text messages to a representative of Accelirate he was immediately terminated. ROA.276-77, 378-79. Given the exact same day timing, a reasonable jury could easily concluded that it was Carmel Smith's text messages and disparaging statements about Mr. Hall caused his termination from Accelirate. The text messages show that Carmel Smith was disparaging Mr. Hall to Accelirate and that she "was under the impression he was not covering my territory which is absolutely my preference" and there "was a reason I terminated him." ROA.276-77, 378-383. A reasonable jury could conclude that Ms. Smith did not want Mr. Hall working for Accelirate. Below is the actual text message exchange:

14

To: **Nikky Shaffer**

Would love to get your feedback. Matt is actually in Houston meeting with Mark. He is available to meet you Tuesday for breakfast if you happen to be in the houston area. Otherwise let's jump on call.

I need to meet with Ginger first. It's just hearsay so let me gauge

Tue, Dec 17, 11:16

Hey there- we need to talk when I can come up for air but getting a lot of complaints on Derek. There was a reason I terminated him and was under the impression he was not covering my territory which is absolutely my preference

Hi Carmel 😊

Hi Carmel, thanks for the heads up, he reports into Matt, can we setup some time to discuss and figure out the best way forward?

Early Jan.

15

Early Jan.
In the meantime, we don't need the hassle please.
Thanks Nicky

ROA.276-77, 378-83.

This text exchange shows that Carmel is stating to Accelirate that she was "getting a lot of complaints on Derek" and that Ms. Smith states "we don't need the hassle please." The apparent hassle to Carmel Smith is Mr. Hall's employment with UiPath. ROA. 276-77, 378-83.

In addition, a prior email exchange between Carmel Smith and Accelirate shows that Ms. Smith was not happy that they had hired Mr. Hall. ROA.266-68.

| | |
|---|---|
| **From:** | Nicole Shaffer |
| **To:** | Carmel Smith |
| **Subject:** | Re: kbHome |
| **Date:** | Monday, December 2, 2019 6:20:51 PM |
| **Attachments:** | image001.png |

Yes, he is! :) started today!

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Carmel Smith <carmel.smith@uipath.com>
**Sent:** Monday, December 2, 2019 7:05:15 PM
**To:** Nicole Shaffer <nicole.shaffer@accelirate.com>
**Subject:** RE: kbHome

So is he with you now?

Carmel Smith
(512) 887-0915

**From:** Nicole Shaffer <nicole.shaffer@accelirate.com>
**Sent:** Monday, December 2, 2019 5:47 PM
**To:** Carmel Smith <carmel.smith@uipath.com>
**Subject:** Re: kbHome

Oooopsss lol my cell had his old email!

Hope you are doing well. :)

- Nikky

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Carmel Smith <carmel.smith@uipath.com>
**Sent:** Monday, December 2, 2019, 5:59 PM
**To:** Nicole Shaffer
**Subject:** RE: kbHome

Hey Nicky – either you hired Derek or you did not know he left UiPath.
Which is it?

Confidential                    UIPATH (HALL) 000307

17

ROA.266-68.

A reasonable jury could conclude that the text messages and emails from Carmel Smith show her displeasure with Accelirate hiring Mr. Hall. The fact that he was terminated the very same day as the text messages could allow a reasonable jury to conclude that there is a causal relationship between Ms. Smith's emails and text messages and Mr. Hall's termination from Accelirate.

Furthermore, the affidavit of Mr. Hall confirms and sheds light on what happened here. ROA.378-79.

> I was employed by UiPath from November, 2018 until my termination on September 23, 2019 which followed an age discrimination and harassment claim made against my supervisor at the time, Carmel Smith. Following termination, I began employment with Accelirate, Inc. in late November, 2019. Accelirate is a top 10 partner for UiPath in the United States. Accelirate was a perfect fit and I had already developed relationships with Accelirate's executive management team and its sales team in the Central and Western United States, while also mainstring the relationships previously developed with those at UiPath.

> My start at Accelirate went well. I was well received and there were absolutely no complaints regarding my work. **At the company Christmas party on Saturday, December 14, 2019 in Miami I was introduced by Matt Gallo to the audience of Accelirate employees that I am the new Vice President of Sales for the entire company.**

> **The first day back to work after the Christmas party was December 16, 2019 and everything was business as usual. I corresponded multiple times with my manager, Matt Gallo, and no mention of any issues were made.** However, on the afternoon of December 17, 2019, I received a call from Mr. Gallo informing me that my services were no longer needed and that December

17, 2019 would be my last day of employment with Accelirate. When I inquired on the call as to why I was being terminated Mr. Gallo informed me that he had received a conversation either via telephone call, text or email messages from UiPath and Mr. Gallo informed me that "it was not going to work." It was obvious to me that he had received information regarding me from UiPath. Mr. Gallo did not state who at UiPath had contacted him, but it was very apparent and clear that someone from UiPath did so and was most likely Carmel Smith. Mr. Gallo also declined to say what was exactly the content of the conversation and who it was with, but given that I was terminated and that **UiPath represents about 90% of all Accelirate's consulting revenue,** it is clear it was something the sender did interfered with my relationship with Accelirate.

I was hired because I came from UiPath and had all the relationships and connections in place with Accelirate. I was there because I came from UiPath. UiPath through Steve King actually recommended me for the job. Mr. King actually recommended me for the job. I was not actually seeking the job but was a reference to me for the job at Accelirate and Mr. Gallo then had hired me based on that recommendation. This apparently changed after the fact.

In any event it was clear to me that the reason I was being terminated from Accelirate was due to communications from UiPath to Accelirate. I was held in good standing with the company until I learned that UiPath was communicating with Accelirate about me. All of this occurred within a few weeks. Whatever UiPath said to Accelirate it definitely caused them to terminate my employment. I would not have been terminated from Accelirate if it had not been for the communications from UiPath.

In its response to the charge of discrimination UiPath admitted that Carmel Smith contacted Accelirate to discuss her "concerns" about me and that she had allegedly received complaints about me and falsely asserted I was harassing UiPath employees to try to get them to leave. This was not true.

ROA.378-79. Therefore on December 14 he was announced as the new Vice

President of Sales and on the same day as the text messages from Carmel Smith to

19

Accelirate Mr. Hall is immediately terminated. There is a fact issue over whether or not Ms. Smith's comments were false or not. Therefore a reasonable jury could conclude that it was the text messages from Carmel Smith, who worked for a company that was 90 percent of Accelirate's business, caused Mr. Hall to be fired from Accelirate. Furthermore a reasonable jury could conclude that the statements made by Ms. Smith were false.

Additional evidence of causation includes;

1.    Accelirate specifically referenced text messages and emails from Defendant when it told Plaintiff he was being terminated; ROA.378-79.

2.    Plaintiff's former supervisor, Carmel Smith, knew about Plaintiff's discrimination complaint and was the one who texted and emailed Accelirate which led to his termination; ROA.188, 266-68, 380-83.

3.    Defendant has admitted that it was Carmel Smith who sent the text messages and emails to Accelirate; ROA.189-191.

4.    Defendant got Plaintiff fired from Accelirate less than four months after he made his age discrimination complaint by making false allegations against him to his new employer. ROA.266-68, 378-83

5.    Appellant had just been named the Vice President of Sales three days prior to his termination, which a reasonable jury could conclude that

Accelirate was happy with his performance to date and that only changed after receiving text messages from Carmel Smith. ROA.378-79.

6.      Accelirate was completely beholden to UiPath as they were 90 percent of Accelirate's business and could not afford to lose the company's good graces. ROA.378-79.

Given all of the facts above, there is sufficient facts to establish causation in this case and that a jury could reasonably conclude that there was a causal link between Ms. Smith's actions and Accelirate's decision to terminate Mr. Hall. *See, e.g., Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 845 (1997) (causal nexus between Appellant's filing of EEOC charge and former employer's negative reference to prospective employer); *Allen v. Texas Dep't of Transp.*, 186 F. App'x 501, 503 (5th Cir. 2006) (assessing the relevant causal nexus as between the filing of an EEOC charge and a negative employment reference)

The facts stated above would allow a reasonable jury to find that a causal connection existed between the discrimination complaint and the negative reference that led to Appellant's termination from his subsequent employer.

## VI.   Conclusion and Prayer for Relief

Summary judgment should not have been granted in this case. Establishing a prima facie case is not a difficult burden according to Fifth Circuit case law and there

is substantial evidence that Appellee's actions directly led to Appellant's termination.

As such, Appellant respectfully requests that the order granting summary judgment

be reversed and this case remanded for a jury trial on the merits.

Respectfully submitted,

The Melton Law Firm, P.L.L.C.
925 South Capital of Texas Hwy.,
Ste. B-225
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile

/s/ John F. Melton_____
John F. Melton
Jmelton@jfmeltonlaw.com
State Bar No. 24013155
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

By my signature hereunder affixed, I certify that a true and correct copy of the foregoing document (proposed sufficient brief), has been transmitted to all parties of record via email and on this 26th day of February, 2024, addressed as follows:

Eric L. Vinson
Kelli Fuqua
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701

*/s/ John F. Melton*_____
John F. Melton

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in FRAP (32)(a)(7)(B).  This entire brief contains 5596 words according to the word-count function of the word-processing system, WordPerfect Office X3, used to prepare the brief. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect Office X3 in Times New Roman format in 14 point font.

*/s/ John F. Melton*
Attorney For Appellant-Appellant