Case No. 23-50651

# In the
# United States Court of Appeals
# For the Fifth Circuit

---

**DEREK HALL,**

*Plaintiff-Appellant,*

v.

**UIPATH, INC.,**

*Defendant-Appellee*

---

On Appeal from the United States District Court for the
Western District of Texas, Austin Division
Civil Action No. 1:21-CV-728

---

## BRIEF OF APPELLEE UIPATH, INC.

---

Tara Porterfield
Kelli Fuqua
LITTLER MENDELSON, P.C.
100 Congress Ave., Suite 1400
Austin, TX 78757
(512) 982-7250
(512) 982-7248 (Fax)

COUNSEL FOR APPELLEE UIPATH, INC.

No. 23-50651

# In the
# United States Court of Appeals
# For the Fifth Circuit

---

**DEREK HALL,**

*Plaintiff-Appellant,*

v.

**UIPATH, INC.,**

*Defendant-Appellee*

---

On Appeal from the United States District Court for the
Western District of Texas, Austin Division
Civil Action No. 1:21-CV-728

---

## CERTIFICATE OF INTERESTED PERSONS

---

Pursuant to Federal Rule of Appellate Procedure 26.1 and 5th Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellant: | Appellant's Counsel: |
|---|---|
| Derek Hall | John F. Melton<br>The Melton Law Firm, P.L.L.C<br>925 South Capital of Texas Highway, #B225<br>Austin, Texas 78746<br>(512) 330-0017 |
| Appellee: | Appellee's Counsel: |
| UiPath, Inc.<br>(NYSE:PATH; no parent<br>corporation and no publicly<br>held corporation owns 10%<br>or more of it stock) | Tara Porterfield<br>Kelli Fuqua<br>LITTLER MENDELSON, P.C.<br>100 Congress Ave., Suite 1400<br>Austin, TX 78757<br>(512) 982-7250<br>(512) 982-7248 (Fax) |

*/s/ Tara Porterfield*
Counsel of Record for Appellee
UiPath, Inc.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellee UiPath, Inc. ("UiPath") respectfully submits that this appeal should not be set for oral argument, as neither the factual or legal issues are novel or complex, and oral argument would not significantly aid the Court's decisional process. The District Court addressed the relevant issues in a well-reasoned and thorough decision.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

I.     JURISDICTIONAL STATEMENT ................................................................. 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 1

III.   STATEMENT OF THE CASE ...................................................................... 2

      A.    Preliminary Statement ........................................................................ 2

      B.    Statement of Relevant Facts ............................................................... 3

            1.    Hall is a Former UiPath Sales Executive Who Was Terminated for Poor Performance. ............................................. 3

            2.    Accelirate Hired Hall. ............................................................... 5

            3.    Smith Raised Concerns to an Accelirate Employee about Hall's Interactions with UiPath. .......................................... 6

            4.    Hall's Accelirate Supervisor Terminated Him Without Knowing of Smith's Text ....................................................... 8

      C.    Procedural History ............................................................................. 9

      D.    The District Court's Decision Granting UiPath's Motion for Summary Judgment. ...................................................................... 10

IV.   SUMMARY OF THE ARGUMENT ......................................................... 12

V.    ARGUMENT ................................................................................................ 13

      A.    Standard of Review .......................................................................... 13

      B.    Legal Framework for a Claim of Retaliation in Violation of the ADEA ................................................................................................ 15

**TABLE OF CONTENTS**
(continued)

Page

C.    The District Court Did Not Err In Concluding that Hall Failed to Present Evidence Establishing a Causal Link Between Hall's Discrimination Complaint and Smith's Text. ....................................16

   1.    The District Court Did Not Err in Concluding that Temporal Proximity of Nearly Four Months Was Insufficient Alone to Establish a Causal Link .........................17

   2.    The District Court Did Not Err in Finding Hall's Alleged Circumstantial Evidence Flawed. ............................................18

D.    The District Court Did Not Err In Concluding That UiPath Established a Legitimate, Non-Discriminatory Reason For Smith's Text, and Hall Failed to Establish That Reason Was Mere Pretext. ...................................................................................20

   1.    UiPath Established a Legitimate, Non-Discriminatory Reason For Smith's Communications With Accelirate. ..........21

   2.    Hall Presented No Evidence of Pretext....................................22

E.    Hall's Suggestion of a Relationship Between Smith's Text and Accelirate's Termination of His Employment Is Immaterial to Hall's Prima Facie Case. ...................................................................25

VI.    CONCLUSION.................................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Texas Dept. of Transp.*,
   186 F. App'x 501 (5th Cir. 2006) ........................................................ 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 14

*Besser v. Texas Gen. Land Office*,
   834 F. App'x 876 (5th Cir. 2020) ................................................. 17, 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................... 13, 14

*Clark County Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001) ........................................................................... 17

*Douglass v. United Services Auto. Ass'n*,
   79 F.3d 1415 (5th Cir. 1996) ............................................................. 14

*Feist v. Louisiana Dept. of Justice, Office of the Atty. Gen.*,
   730 F.3d 450 (5th Cir. 2013) ............................................................. 23

*Fields v. Phillips School of Business*,
   No. 95-50045, 59 F.3d 1242, 1995 WL 413024 (5th Cir. 1995) ........ 16

*Flanner v. Chase Inv. Servs. Corp.*,
   600 F. App'x 914 (5th Cir. 2015) ...................................................... 17

*Grizzle v. Travelers Health Network, Inc.*,
   14 F.3d 261 (5th Cir. 1994) ......................................................... 14, 15

*Heggemeier v. Caldwell County, Tex.*,
   826 F.3d 861 (5th Cir. 2016) ............................................................. 15

*Holtzclaw v. DSC Communications Corp.*,
   255 F.3d 254 (5th Cir. 2001) ............................................................. 15

*International Shortstop, Inc. v. Rally's*,
   939 F.2d 1257 (5th Cir. 1991) ........................................................... 15

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                                                        **Page(s)**

*Jones v. Gulf Coast Restaurant Grp., Inc.*,
   8 F.4th 363 (5th Cir. 2021) .................................................................25

*Kopszywa v. Home Depot USA, Inc.*,
   620 F. App'x 275 (5th Cir. 2015) ........................................................23

*Krim v. BancTexas Group, Inc.*,
   989 F.2d 1435 (5th Cir. 1993) ............................................................14

*Little v. Republic Refining Co., Ltd.*,
   924 F.2d 93 (5th Cir. 1991) .................................................................25

*Luna v. Corrections Corp. of Am.*,
   No. 6:09-CV-084-C, 2011 WL 13180171 (N.D. Tex. Feb. 10,
   2011), *aff'd*, 469 F. App'x. 301 (5th Cir. 2012) ................................27

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................14

*National Ass'n, Govern. Emp. v. City Pub. Serv*,
   40 F.3d 698 (5th Cir. 1994) .................................................................14

*Peace v. Harvey*,
   207 F. App'x 366 (5th Cir. 2006) ........................................................19

*Pittman v. Collin County, Texas*,
   No. 4:08-CV-257, 2010 WL 1330752 (E.D. Tex. Mar. 30, 2010).....................24

*Price v. Federal Exp. Corp.*,
   283 F.3d 715 (5th Cir. 2002) ..............................................................25

*Procter & Gamble Co. v. Amway Corp.*,
   376 F.3d 496 (5th Cir. 2004) ..............................................................20

*Robinson v. Orient Marine Co. Ltd.*,
   505 F.3d 364 (5th Cir. 2007) ..............................................................13

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                    **Page(s)**

*Roy v. City of Monroe,*
    950 F.3d 245 (5th Cir. 2020) ........................................................20, 23

*Sherrod v. American Airlines, Inc.,*
    132 F.3d 1112 (5th Cir. 1998) ...............................................15, 22, 23

*Windham v. Harris County, Tex.,*
    875 F.3d 229 (5th Cir. 2017) ...............................................................13

**Statutes**

28 U.S.C. § 1291 ......................................................................................1

Age Discrimination in Employment Act .........................................*passim*

**Other Authorities**

5th Circuit Local Rule 28.2.2 ....................................................................3

Fed. R. Civ. P. 12(b)(6) ..........................................................................17

Fed. R. Civ. P. 56(a) ...............................................................................13

# I.
## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because Appellant Derek Hall ("Hall") appeals from a final judgment in the United States District Court, Western District of Texas. The District Court issued an Order granting UiPath's Motion for Summary Judgment on August 8, 2023 (the "Order"). ROA.405-422. Appellant filed his Notice of Appeal to this Court on September 6, 2023. ROA.7 (Docket Sheet), 423-424 (Notice of Appeal).

# II.
## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in granting summary judgment in favor of UiPath on Hall's claim for post-employment retaliation in violation of the Age Discrimination in Employment Act ("ADEA")[1] on the following alternative grounds:

1.     Hall failed to establish a prima facie case of retaliation because Hall did not adduce evidence establishing a causal link between an internal complaint that he made at UiPath and an allegedly retaliatory "reference" provided to Hall's new

---

[1] At the District Court, Hall also asserted a claim for tortious interference with contractual relations. ROA.33-40. The District Court granted summary judgment in UiPath's favor on the tortious interference claim as well. ROA.405-422. However, Hall does not appeal the District Court's decision regarding his tortious interference claim. Appellant's Brief at 1 ("Statement of Issues"). As such, only the disposition of Hall's ADEA retaliation claim is before this Court on appeal.

employer;

2.     UiPath presented evidence establishing the alleged retaliatory "reference" was based upon a legitimate, non-discriminatory reason, and Hall failed to provide evidence showing that such reason was pretext for retaliation – both conclusions by the District Court that Hall does not contest.

### III.
### STATEMENT OF THE CASE

**A.     Preliminary Statement**

Hall is a former sales employee of UiPath. After his supervisor placed him on a performance improvement plan ("PIP"), Hall promptly filed an age discrimination complaint against his supervisor. UiPath thereafter terminated Hall's employment at the conclusion of the PIP, when Hall's performance did not improve. Hall then went to work for non-party Accelirate, who conducts business with UiPath. Within a month of his hiring, Accelirate terminated Hall because of his poor fit with his team and overstated qualifications.

Hall alleges that his former UiPath supervisor retaliated against him for filing the discrimination complaint by text messaging an Accelirate employee that she had received complaints about Hall and preferred he not cover her territory.

However, as determined by the District Court, Hall failed to establish a prima facie case of retaliation, because he did not demonstrate a causal link between his protected activity and UiPath's alleged adverse action – the text message. Hall fails

to show on appeal this conclusion was error. Further, the District Court concluded, UiPath established a legitimate, non-discriminatory reason for Hall's former supervisor's text – Hall's constant "pestering" of UiPath employees for leads – which Hall failed to show was pretext for retaliation. Hall does not even argue to this Court that the District Court erred in this alternative basis for its decision.

After nearly a year of discovery, Hall offered only his own conclusory speculation and subjective beliefs to support his retaliation claim. The District Court did not err in holding that Hall failed to present evidence either establishing the prima facie element of causation or rebutting UiPath's legitimate non-discriminatory reason for its purported adverse action with some evidence of pretext.

**B.    Statement of Relevant Facts**[2]

**1.    Hall is a Former UiPath Sales Executive Who Was Terminated for Poor Performance.**

Hall is a former employee of UiPath. ROA.34 (Plaintiff's First Amended Complaint ("Amended Complaint"), ¶4.1). He began working for UiPath as a Senior Account Executive, which is a sales role, on November 12, 2018. ROA.209 (Offer Letter). Hall reported to Carmel Smith ("Smith"), the same person who hired him.

---

[2] In his Statement of Facts, Hall relies almost exclusively on his own Declaration and his Original Complaint (which was amended and is not the operative pleading). While he cites to excerpts from his deposition once, the record does not support the statement. Additionally, Appellant's Brief does not cite a record reference to support every assertion made, as is required by 5th Circuit Local Rule 28.2.2.

ROA.34 (Amended Complaint, ¶4.1); 209 (Offer Letter); 187 (Declaration of Carmel Smith ("Smith Decl.")).

Hall exhibited a number of performance and behavioral deficiencies which prompted Smith to place him on a thirty-day performance improvement plan ("PIP") on August 29, 2019. ROA.187-189 (Smith Decl.); 213-215 (PIP). Promptly thereafter, Hall went to the UiPath People Team to complain, for the first time, that he had been discriminated against by Smith based on his age.[3] ROA.301 (Deposition of Derek Hall ("Hall Dep.")) (Question: "And after you received this PIP, you went to HR and filed a discrimination complaint; is that right?" Answer: "Correct."). Smith was unaware of the complaint during the remainder of Hall's employment. ROA.188 (Smith Decl.).[4]

---

[3] Hall states in his brief that "there is evidence that Carmel Smith knew of the protected activity, [and] put him on a performance improvement plan one day after he made the non-discrimination complaint." Appellant's Brief at 13 (citing ROA.188-19 (Smith Decl.), ROA.378-79 (Hall Decl.); *see also* ROA.36 (Amended Complaint ¶ 4.6) (pleading that he was placed on the PIP the day after he filed his internal discrimination complaint). The evidence does not corroborate that statement. The email correspondence shows the PIP was communicated to Hall on August 29. ROA.213. Hall conceded in his deposition that he filed the discrimination complaint after receiving the PIP. ROA.301.

[4] Citing Smith's declaration, Appellant states that he made an age discrimination complaint on August 29, 2019, "of which Carmel Smith was aware." Appellant's Brief at 9 (citing ROA.188-89). This statement implies that Smith was aware of the complaint at the time he made it. Smith's Declaration contradicts this implication – she states that she only learned of the complaint at some point after Hall's termination from UiPath. ROA.188.

Hall continued to perform unsatisfactorily while on the PIP. ROA.187-189, 220-251 (Smith Decl. and related exhibits). In his deposition, Hall admitted many of the shortcomings cited by Smith, including that he had zero renewals since he was hired and there were UiPath customers who did not want to work with him. ROA.293, 299-300 (Hall Dep.).

As a result of Hall's consistently poor performance and conduct, feedback from other parties, and Hall's failure to progress in his PIP, UiPath decided to terminate his employment with UiPath on October 1, 2019. ROA.189 (Smith Decl.), ROA.253 (Termination Letter). In accordance with a severance agreement, Hall received "garden leave" beginning on October 2, 2019, through his effective termination date of November 12, 2019, during which Hall received his salary and reached a Restricted Stock Unit vesting event. ROA.254-264 (Separation and Release of Claims Agreement ("Separation Agreement")); ROA.302-304 (Hall Dep.) (acknowledging letter of termination and garden leave starting October 2, 2019). Pursuant to the Agreement, which Hall signed on October 12, 2019, Hall released all legal claims against UiPath that existed or could have existed at the time of the signing, including claims arising from his employment or termination. ROA.252-264 (Separation Agreement), 302-317 (Hall Dep.).

### 2.     Accelirate Hired Hall.

According to Hall, a UiPath colleague and personal friend, Steve King,

recommended that he apply with Accelirate. ROA.318 (Hall Dep.). Accelirate partners with UiPath to sell and implement UiPath products. ROA.318 (Hall Dep.), 190 (Smith Decl.), 340 (Declaration of Matt Gallo ("Gallo Decl.")), 358 (Deposition of Carmel Smith ("Smith Dep.")). Accelirate is one of many companies who function in this respect, and Accelirate has other automation partners aside from UiPath. ROA.190 (Smith Decl.), 340 (Gallo Decl.), 358 (Smith Dep.). UiPath and Accelirate are separate legal entities and not related in any way other than via their business relationship. ROA.318 (Hall Dep.), 190 (Smith Decl.), 340 (Gallo Decl.).

Based on the recommendation of King, and without contacting UiPath directly for a reference, Accelirate's Chief Revenue Officer, Matt Gallo ("Gallo"), offered Hall a job as a Vice President of Sales. ROA.320 (Hall Dep.), 341 (Gallo Decl.). The compensation for this position was significant, with on-target earnings to be around $395,000-$400,000 per year. ROA.321 (Hall Dep.); *see also* ROA.342 (Gallo Decl.). Hall understood he was expected to leverage the existing relationships he had within UiPath to develop a pipeline of business. *See* ROA.320 (Hall Dep.). Hall admitted he did not disclose to Accelirate that his employment with UiPath had been involuntarily terminated. *See* ROA.323 (Hall Dep.), 341 (Gallo Decl.). Hall began working for Accelirate around November 28, 2019. ROA.328 (Hall Dep.).

### 3. Smith Raised Concerns to an Accelirate Employee about Hall's Interactions with UiPath.

On December 2, 2019, Hall's work colleague at Accelirate, Nikky Shaffer

("Shaffer"), accidentally emailed Hall at his old UiPath email address regarding Accelirate business. ROA.352-354 (Smith Dep.), 189-190 (Smith Decl.), 266 (Email). Hall's old UiPath email address was being forwarded to Smith. ROA.352-354 (Smith Dep.), 189-190 (Smith Decl.). In response to Shaffer's re-directed email, Smith emailed Shaffer, asking if Accelirate had hired Hall or if Shaffer was unaware he left UiPath. ROA.352-354, 189-90, 266. Shaffer responded that Hall had just begun working for Accelirate. ROA.352-354, 189-190, 266. The two had no further communication about Hall at that time. ROA.352-354, 189-190, 266.

Smith explained that, after that email exchange, Hall "began badgering his old colleagues, and my subordinates, at UiPath for business leads. [His] communication attempts were harassing and unrelenting, and several of my employees, including Mark Waldheim and Rob Friedman – complained to me that Derek was bothering them." ROA.190 (Smith Decl.). Smith elaborated on these complaints in her deposition, explaining the complaint from Waldheim: "Mark had asked me what he should do to have [Hall] stop pestering him, and when I asked him what he meant by that, he proceeded to explain that he was contacted daily just continuous voicemails. Mark had mentioned that he was persistent, extremely persistent, and I didn't have advice for Mark at the time." ROA. 356 (Smith Dep.). Smith further testified that Friedman and a third individual "reached out to [Smith] with the exact same feedback [Waldheim] had. They were receiving numerous calls; call after call

after call." ROA.357 (Smith Dep.).

As a result of these complaints, Smith texted Shaffer on December 17, 2019, writing: "Hey there – we need to talk when I can come up for air but getting a lot of complaints on Derek. There was a reason I terminated him and was under the impression he was not covering my territory which is absolutely my preference." ROA.272 (Text), ROA.355-358 (Smith Dep.). In response, Shaffer clarified that Hall did not report to her, but instead to Gallo, and could they all "set up some time to discuss and figure out the best way forward." ROA.272. Smith responded: "Early Jan. In the meantime, we don't need the hassle please." ROA.276. There is no evidence that Smith had any further communications with Shaffer or anyone else at Accelirate regarding Hall. *See* ROA.191 ("I did not talk to [Shaffer] any more about [Hall], nor did I reach out to [Gallo] about [Hall].").

### 4. Hall's Accelirate Supervisor Terminated Him Without Knowing of Smith's Text.

During the first month of Hall's employment, Gallo became concerned about Hall, explaining:

> It quickly became apparent that my initial reservations about Derek were correct: he did not mesh well, personality- or communication-wise with the Sales team. In particular, a long-term, solid performer on the Sales team—Nikky Shaffer—indicated to me that Derek's communication style made her feel uncomfortable. It also became clear to me that his relationships with UiPath were not what he represented them out to be, namely that he had

> no relationship advantage with anyone of significance that
> would indicate net positive business.

ROA.341-342 (Gallo Decl.). Given Hall's "significant compensation package," Gallo was "not willing to continue paying that large price tag for someone who oversold his capabilities and did not prove to be a good fit with the Sales team." ROA.342 (Gallo Decl.). Therefore, less than a month after Hall started his employment with Accelirate, Gallo terminated Hall's employment via telephone on December 17, 2019. ROA.342 (Gallo Decl.), 331-332 (Hall Dep.).

## C.     **Procedural History**

On August 19, 2021, Hall filed his Complaint in this Court. ROA.2 (Docket Sheet). On September 30, 2021, he filed his Amended Complaint, which is the current operative complaint. *Id.*; *see* ROA.33-40 (Amended Complaint). On February 17, 2023, UiPath filed its Motion for Summary Judgment ("Motion"), to which it attached the Declarations of Smith and Gallo, as well as excerpts from the Depositions of Hall and Smith. ROA.5 (Docket Sheet); ROA.163-360 (Defendant's Motion for Summary Judgment). Hall filed an Opposition, attaching only his own Declaration. ROA.370-384 (Plaintiff's Response to Defendant's Motion for Summary Judgment). On August 8, 2023, the District Court granted UiPath's Motion and dismissed Hall's claims of retaliation in violation of the ADEA and tortious interference with contractual relations. ROA.405-422 (Order). Hall appealed the Order on September 6, 2023. ROA.7 (District Court Docket Sheet),

423-424 (Notice of Appeal). Hall's appeal is limited to the District Court's decision

on his ADEA retaliation claim. *See* Appellant's Brief at 1 (Statement of Issues).

## D.    **The District Court's Decision Granting UiPath's Motion for Summary Judgment.**

In its well-reasoned Order, the District Court held that Hall failed to establish

a prima facie case of retaliation, that UiPath established a non-discriminatory reason

for its actions, and that Hall failed to establish that UiPath's reason was a mere

pretext for retaliation. ROA.405-422 (Order).

Evaluating the elements of a prima facie case of retaliation, the District Court

first determined "that Hall engaged in a statutorily protected activity by filing an

internal age discrimination complaint while at UiPath." ROA.412. It also determined

that UiPath committed an adverse action by providing a negative reference.[5]

ROA.415.

However, the District Court determined that Hall failed to present evidence

showing a causal link existed between Hall's protected activity – his age

discrimination complaint to UiPath – and UiPath's adverse employment action –

---

[5] The District Court recognized that this Court has not "conclusively decided whether a negative reference given by a former employer to a subsequent employer after the employee has already been hired can form the basis of a retaliation claim," but "assume[d], without deciding," that it could. ROA.413. The District Court then concluded that, while "it is unlikely that the brief text conversation between Smith and Shaffer, a non-supervisory employee qualifies as a negative reference," it would resolve "the close question of the negative reference in favor of Hall." ROA.415.

Smith's purported negative reference several months later. ROA.415-419. The District Court first determined that a temporal lapse of 4 months between when Hall made his internal complaint at UiPath and Smith's text message to Accelirate was not enough, alone, to establish causation. ROA.416. The Court then determined that Hall failed to offer evidence to substantiate his allegations that Smith had terminated him from UiPath because of his internal complaint and therefore also acted with retaliatory intent when she later communicated with Accelirate. ROA.416-418. Accordingly, because "[t]he conclusory statements proffered by Hall and a temporal separation of nearly four months is insufficient to support an inference of causation," the District Court found that Hall did not meet the third element of the prima facie case of retaliation and his claim failed as a matter of law. ROA.418-419.

The District Court finally held that, even if Hall could establish a prima facie case of retaliation, UiPath established a legitimate, non-discriminatory reason for Hall's communications to Shaffer, which Hall did not rebut through evidence of pretext. ROA.419. Namely, Hall was persistently contacting UiPath employees—his former coworkers—for potential sales leads, which was disruptive to UiPath's business and led to complaints regarding Hall's behavior. ROA.419. While Hall denied harassing his former coworkers to get them to leave UiPath, he did not refute that he was contacting them for sales leads. ROA.419.

For either of these alternative reasons, the District Court properly concluded that summary judgment was appropriate on Hall's ADEA retaliation claim.

## IV.
## SUMMARY OF THE ARGUMENT

The District Court did not err in granting summary judgment for UiPath for any one of two alternative reasons: (1) Hall adduced no evidence of a causal link between his protected activity and his former supervisor's communication to Accelirate – UiPath's purported negative reference – and therefore failed to meet his burden of establishing a prima facie case of retaliation; and (2) UiPath established a legitimate, non-discriminatory reason for the communication to Accelirate, and Hall failed to establish that the reason was pretext for retaliation – conclusions that Hall does not contest here. This Court should therefore affirm the District Court's determination that UiPath is entitled to judgment as a matter of law. ROA.411-419.

Hall contends that his protected activity – the filing of a discrimination complaint at UiPath – led to his eventual termination by his subsequent employer, Accelirate. As the District Court found, Hall failed to present credible evidence that establishes a genuine issue of material fact on the causal link on which his theory depends. A temporal proximity of nearly four months could not, standing alone, establish causation. There is no evidence that his former UiPath supervisor, Smith, sent an email or text to Accelirate employee, Shaffer, because of Hall's discrimination complaint. As the District Court properly determined, then, Hall

thereby failed to establish a causal link. While Hall also contends that his Accelirate supervisor only terminated his employment because of Smith's text, that argument is immaterial where the causal link between his protected activity and UiPath's purported adverse action fails and unsupported by the record.

Additionally, as determined by the District Court and unchallenged by Hall in this Court, UiPath presented a legitimate, non-discriminatory reason for Smith's texts to Shaffer – Hall's unrelenting pestering of UiPath employees for business leads. Hall failed to present evidence rebutting this reason or establishing that it was pretext for retaliation.

Accordingly, two independent bases support affirmance of the District Court's Order granting summary judgment in favor of UiPath.

## V.
## ARGUMENT

### A.     Standard of Review

This Court reviews the grant of summary judgment *de novo*, applying the same standards as the District Court. *Windham v. Harris County, Tex.*, 875 F.3d 229, 234 (5th Cir. 2017) (citing *Robinson v. Orient Marine Co. Ltd.*, 505 F.3d 364, 365 (5th Cir. 2007).

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. The burden then shifts to the non-moving party to identify in the record where there exists an issue of material fact sufficient to defeat summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

"Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without any significant probative evidence tending to support the complaint.'" *National Ass'n, Govern. Emp. v. City Pub. Serv*, 40 F.3d 698, 713 (5th Cir. 1994) ((quoting *Anderson v. Liberty Lobby, Inc.,*477 U.S. 242, 249 (1986) (internal quotations omitted)); *see Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *see also Grizzle v. Travelers Health Network, Inc*., 14 F.3d 261, 268 (5th Cir. 1994) ("[plaintiff's] own self-serving generalized testimony stating her subjective belief that discrimination occurred" is "simply insufficient to support a jury verdict in plaintiff's favor."). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Krim v. BancTexas Group, Inc*., 989 F.2d 1435, 1449 (5th

Cir. 1993) (quoting *International Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1266 (5th Cir. 1991) (internal quotations omitted)).

**B.    Legal Framework for a Claim of Retaliation in Violation of the ADEA**

When analyzing a retaliation claim brought under the ADEA, the Fifth Circuit applies a burden-shifting standard at the summary-judgment stage. *See Grizzle*, 14 F.3d at 267. First, a plaintiff must establish a prima facie case of retaliation. *Heggemeier v. Caldwell County, Tex.*, 826 F.3d 861, 869 (5th Cir. 2016). "[I]f the plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Finally, the burden shifts back to the plaintiff to "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation." *Id.*

To establish a prima facie case of retaliation, Hall must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Heggemeier*, 826 F.3d at 869 (quoting *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 259 (5th Cir. 2001).

**C.**   **The District Court Did Not Err In Concluding that Hall Failed to Present Evidence Establishing a Causal Link Between Hall's Discrimination Complaint and Smith's Text.**

A plaintiff who bases a retaliation claim on allegations that a former employer provided a negative reference that affected their subsequent employment prospects must establish a causal link between his protected activity and the negative reference. *See, e.g., Allen v. Texas Dept. of Transp.*, 186 F. App'x 501, 504 (5th Cir. 2006) (affirming summary judgment in favor of former employer on retaliation claim involving allegation that plaintiff did not receive job because of a negative reference given by her former supervisor, where the record did not support that "any alleged negative reference was causally linked to the EEOC charge"); *Fields v. Phillips School of Business*, No. 95-50045, 59 F.3d 1242, 1995 WL 413024, at *2 (5th Cir. 1995) (affirming summary judgment for former employer where the plaintiff's "self-serving, generalized assertions of his subjective belief" that his former employer gave a negative reference in retaliation for his filing an EEOC charge was insufficient to establish a causal link between his charge and the reference).

Here, Hall asserted, and the District Court found, that Smith's communications to Shaffer at Accelirate constituted a negative reference. Accordingly, Hall was required to establish a causal link between his internal complaint at UiPath and Smith's communication to Shaffer nearly 4 months later.

He failed to submit evidence doing so.

1.    **The District Court Did Not Err in Concluding that Temporal Proximity of Nearly Four Months Was Insufficient Alone to Establish a Causal Link**

Hall primarily relies on temporal proximity to establish the requisite causation. *See* Appellant's Brief at 11-12. The District Court concluded, however, that "a temporal lapse of nearly four months between Hall's internal complaint and his termination from Accelirate, by itself, is insufficient to establish causation." ROA.416 (Order).

The District Court relied on this Court's decision in *Besser v. Texas Gen. Land Office,* 834 F. App'x 876, 885-86 (5th Cir. 2020). ROA.416 (Order). In *Besser*, this Court affirmed the district court's FED. R. CIV. P. 12(b)(6) dismissal for lack of any causal link, holding that "two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation." *Id.*; *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (requiring temporal proximity to be "very close" to establish causation by itself); *see also Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 921 (5th Cir. 2015) ("[T]his Court's case law, although largely unpublished, fits with the Supreme Court's requirement that the temporal proximity be 'very close' to show causation, and our previous decisions that a four-month gap in time, standing alone, is insufficient to establish prima facie evidence of

17

causation.") (quotations omitted) (citing cases). The District Court did not err in thereby determining that the proximity of nearly four months between Hall's age-discrimination complaint to UiPath and Smith's text to Shaffer is not, standing alone, "within the 'very close' proximity that is necessary to establish causation." *Besser*, 834 F. App'x at 885.

### 2. The District Court Did Not Err in Finding Hall's Alleged Circumstantial Evidence Flawed.

Hall alleges that other circumstantial evidence buttresses his insufficient showing of a close temporal proximity and thus establishes a causal link. Specifically, Hall claims (1) Smith placed him on the PIP after he filed his internal discrimination complaint; (2) the PIP contained impossible goals; and (3) Smith terminated his employment at UiPath before the PIP had concluded. All of these pieces of circumstantial evidence together, he claims, shows that Smith acted with retaliatory intent when Smith texted Shaffer about him 4 months later. However, as the District Court held, Hall produced no evidence supporting these factual allegations and subjective conclusions. ROA.416-18 (Order).

First, Hall produced no evidence that he was placed on a PIP *before* he filed his complaint. Although he alleges this in his Amended Complaint and argues in his Brief that Smith knew about his protected activity and put him on a performance improvement plan one day <u>after</u> he filed a discrimination complaint, the evidence contradicts these allegations. *See* Appellant's Brief at 13 (citing ROA.188-189

(Smith Decl.), 378-379 (Hall Decl.). Hall does not address this issue in his Declaration, and Smith's Declaration reflects that he filed his complaint after being placed on the PIP. ROA.378-79 (Hall Decl.), 188 (Smith Decl.) In fact, Hall's own testimony confirms that he went to HR and filed the discrimination complaint after he received the PIP. ROA.301 (Hall Dep.). As the District Court found, the evidence establishes Smith's placement of Hall on the PIP preceded his complaint, and, therefore, cannot show causation. ROA.417 (Order) (citing *Peace v. Harvey*, 207 F. App'x 366, 368 (5th Cir. 2006) ("A number of the incidents upon which [Plaintiff] relies pre-date her EEOC complaint, and thus cannot logically support a retaliation claim.")).

Hall further conceded that he experienced some of the performance issues that led to the PIP, including that he "didn't communicate to [UiPath's] expectations," that he had zero renewals since he was hired, and that there were UiPath customers who did not want to work with him. ROA.293, 299-300 (Hall Dep.) For this additional reason, being placed upon the PIP is not evidence of any retaliatory motive.

Second, Hall produced no evidence that the PIP contained "impossible" goals. The District Court found that Hall failed to provide any evidence showing either the alleged "impossibility" of those goals or the discrepancies between the goals and the original expectations of his position while at UiPath. ROA.418 (Order). In his Brief,

Hall again cites only Smith's Declaration and his own deposition, neither of which substantiate this allegation. *See* Appellant's Brief at 13.

Third, Hall produced no evidence that he was terminated before the PIP concluded. Hall contends that he was terminated from his position on September 23, 2019, before the end of the 30-day PIP. Appellant's Brief at 13. However, as the District Court found, the evidence does not corroborate this claim. ROA.418 (Order). Hall's termination letter from UiPath was dated October 1, 2019, and his termination was not set to become effective until November 12, 2019, after a period of "garden leave." ROA.253 (Termination Letter); ROA.254 (Separation Agreement). Hall fails to submit any evidence supporting his assertion that he was terminated on September 23, 2019, or any other date earlier than October 1, 2019.

**D.    The District Court Did Not Err In Concluding That UiPath Established a Legitimate, Non-Discriminatory Reason For Smith's Text, and Hall Failed to Establish That Reason Was Mere Pretext.**

Even if Hall established a prima facie retaliation case, which he did not, the District Court did not err in determining that UiPath established a legitimate, non-discriminatory reason for Smith's messages and Hall failed to proffer evidence of pretext. Hall does not dispute these conclusions in his Brief and has therefore waived this argument. *See Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) ("Failure [to] adequately to brief an issue on appeal constitutes waiver of that argument.") (quoting *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir.

20

2004)). Accordingly, this Court should affirm the District Court's judgment on this alternative basis.

### 1. UiPath Established a Legitimate, Non-Discriminatory Reason For Smith's Communications With Accelirate.

The District Court did not find that Smith's initial email exchange with Shaffer was part of the negative reference. ROA.413-415 (Order). Regardless, the evidence establishes that Smith's first email exchange with Shaffer was prompted by Shaffer accidentally emailing Hall at his old UiPath email address, which was being forwarded to Smith. Smith responded to clarify whether Accelirate had hired Hall or did not know that he had left UiPath. ROA.266 (Email). Smith's email to Shaffer, with whom she had regular communications as part of their roles at their respective companies, was wholly innocuous and a reasonable response to Shaffer's misdirected email. ROA.190 (Smith Decl.).

The evidence further establishes that once he became employed by Accelirate, Hall began contacting his old colleagues at UiPath for business leads. ROA.190 (Smith Decl.). According to Smith, Hall's communication attempts with his prior colleagues were "harassing and unrelenting." ROA.355-358 (Smith Dep.), 190 (Smith Decl.). To this end, Smith received complaints from multiple individuals about Hall's persistent communications. ROA.355-358 (Smith Dep.), 190 (Smith Decl.). As such, Smith justifiably texted Shaffer on December 17, 2019, to tell

Shaffer that she had been receiving complaints about Hall. ROA.190 (Smith Decl.), 269-277 (Text).

Smith further explained her concern regarding Hall covering her territory: "I had terminated Derek for numerous reasons, and so as a partner in my territory, I expect those partners to collaborate to hit their numbers equally, to be able to forecast properly, to be able to communicate effectively. And so, we had just finished a performance improvement plan for those specific objectives. And so yes, I felt it was not beneficial for my team to continue working with Derek in that capacity but just now on the other side." ROA.353-54 (Smith Dep.). Smith thereby articulated a legitimate, non-discriminatory reason for her text expressing her preference that Hall not cover her territory.

UiPath "refuted any hint of retaliation by producing evidence that" Smith's text messages to Shaffer were driven by legitimate business concerns, not Hall's prior age-discrimination complaint. *See Sherrod*, 132 F.3d at 1122. Accordingly, the District Court did not err in concluding that UiPath articulated a non-discriminatory and non-retaliatory basis for Smith's communications with Shaffer.

### 2.    Hall Presented No Evidence of Pretext.

"If the defendant advances a legitimate reason for the adverse employment action, then the plaintiff must adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."

*Sherrod*, 132 F.3d at 1122. To establish pretext, Hall "must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the challenged adverse employment action 'but for' the protected activity." *Kopszywa v. Home Depot USA, Inc.*, 620 F. App'x 275, 8 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Feist v. Louisiana Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

The District Court concluded that Hall failed to rebut UiPath's legitimate non-discriminatory reason for Smith's text. ROA.419 (Order). It found that, while Hall denied "harassing UiPath employees to try to get them to leave," he did "not refute that he was contacting them for potential sales leads." ROA.419 (citing ROA.379).

Hall again makes no effort to argue to this Court that the District Court erred in this conclusion and thus again waives this argument on appeal. *See Roy*, 950 F.3d at 251. The only mention of "pretext" in Hall's brief comes in a heading: "Circumstantial evidence can establish causal connection and pretext." Appellant's Brief at 12. In the section that follows that heading, Hall argues only that circumstantial evidence (that is not supported by the record, *see infra* at Section V.C.2.) establishes a causal link between his discrimination complaint and UiPath's actions while he was employed at UiPath. Hall fails to present evidence that calls into question UiPath's explanation for Smith's communications with Accelirate or otherwise establishes pretext.

In the same section of Hall's Brief, Hall cites *Pittman v. Collin County, Texas*, No. 4:08-CV-257, 2010 WL 1330752, at *5 (E.D. Tex. Mar. 30, 2010), which provided the following examples of circumstantial evidence that may be relevant to establishing a causal link: (1) knowledge of the protected activity of the decision maker, (2) expression of a negative attitude toward the employee's protected activity, (3) failure to follow company policies, (4) different treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for discharge was false. Appellant's Brief at 12. Notably, the *Pittman* court, finding no causal link, did not address pretext. Hall produced no evidence regarding any of these factors.

Hall produced no evidence establishing that, at the time Smith communicated with Shaffer about Hall, she knew of Hall's discrimination complaint. In her Declaration, Smith states that she learned about the internal complaint after Hall's employment ended and did not think she knew of the complaint when she exchanged the text messages with Shaffer. ROA.188, 190 (Smith Decl.). No contrary evidence exists. Further, Hall makes no effort to present evidence establishing examples (2) – (5) from *Pittman*.

In the end, the only evidence before the District Court overwhelmingly supports its decision. Hall's declaration is based solely on his own speculation and subjective belief that something other than his own performance deficiencies must have caused both employers to terminate his employment. Such speculation and

subjective beliefs, and the attenuated inferences that accompany them, are insufficient to avoid summary judgment. *See Jones v. Gulf Coast Restaurant Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (explaining that "we are 'not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief,' when the evidence in the record 'supports [the employer's] proffered justification" and not [the employee's] claims of pretext") (quoting *Little v. Republic Refining Co., Ltd.* , 924 F.2d 93, 96 (5th Cir. 1991), and *Price v. Federal Exp. Corp.*, 283 F.3d 715, 722 (5th Cir. 2002)).

For this additional reason, the District Court's decision dismissing Hall's ADEA retaliation claim should be affirmed.

**E.     Hall's Suggestion of a Relationship Between Smith's Text and Accelirate's Termination of His Employment Is Immaterial to Hall's Prima Facie Case.**

In addition to Hall's flawed argument that there is a causal link between his discrimination complaint and Smith's messages to Shaffer, Hall posits there "is [sic] sufficient facts to establish causation in this case and that a jury could reasonably conclude that there was a causal link between Ms. Smith's actions and Accelirate's decision to terminate Mr. Hall." Appellant's Brief at 21; *see also* Appellant's Brief at 13 ("Evidence of a causal connection between the termination by Accelirate on December 17, 2019 and the making of the discrimination complaint includes…"). However, to state a prima facie case, Hall must establish a causal link between *his*

*protected activity* – his internal complaint at UiPath, and *UiPath's adverse employment action* – the negative reference.[6] *See infra* at Section V.C. Because Hall cannot adduce evidence showing that Smith acted in retaliation for his protected activity by sending the text message to Shaffer, any connection between his discrimination complaint and Accelirate's termination decision is severed.

Regardless, Hall relies on inadmissible hearsay and speculation to argue that Accelirate terminated his employment because of Smith's texts. *See* ROA.378 (Hall Decl.) (recounting inadmissible hearsay that Gallo said "he had received a conversation either via telephone call, text or email messages from UiPath" but did not say "what was exactly the content of the conversation and who it was with"); ROA.333-334 (Hall Dep.) (conceding he did not know the form of the communication he claims Gallo referenced, nor who sent it, nor its content, nor did he see any such messages). In contrast, admissible evidence establishes that

---

[6] *See* ROA.53 (Amended Complaint) ¶¶ 4.4-4.5 (alleging Smith's contacts with Accelirate to discuss her "concerns" were a "negative reference"); ROA.371 (arguing a negative reference may qualify as an adverse employment action); ROA.373 (disclaiming that he relies on a "cat's paw" theory of liability and explaining: "Plaintiff is not necessarily claiming that Accelirate illegally retaliated against him by terminating him or that Accelirate even knew about the discrimination complaint, Plaintiff is claiming that Defendant retaliated against him by giving him a negative reference that led to his termination with Accelirate."); ROA.373 ("Plaintiff is claiming that Defendant retaliated against him by giving him a negative reference that led to his termination with Accelirate"); and ROA.376 (arguing that "a causal connection existed between the discrimination complaint and the negative reference").

Accelirate did not rely on any communication from UiPath. *See* ROA.342 (Gallo Decl.) (stating that no one at UiPath demanded that Accelirate terminate Hall's employment); ROA.191 (Smith Decl.) (explaining she did not talk to Shaffer about Hall after sending the text and did not reach out to Gallo about Hall). Instead, as Gallo explained, he terminated Hall because he was "not willing to continue paying that large price tag for someone who oversold his capabilities and did not prove to be a good fit with the Sales team." ROA.341-342 (Gallo Decl.); *see also Luna v. Corrections Corp. of Am*., No. 6:09-CV-084-C, 2011 WL 13180171, at *7 (N.D. Tex. Feb. 10, 2011), *aff'd*, 469 F. App'x. 301 (5th Cir. 2012) (holding that employer had legitimate, non-discriminatory reason to terminate plaintiff's employment where clients took issue with plaintiff's deficiencies in his role).

In the end, the District Court did not err in not considering whether there was any connection between UiPath's negative reference and Accelirate's termination decision, because it had no bearing on Hall's prima facie case or UiPath's reason for its alleged adverse action. Likewise, this Court can affirm without consideration of this attenuated argument.

# VI.
# <u>CONCLUSION</u>

For either of the foregoing alternate reasons, UiPath respectfully requests that the Court affirm the District Court's order granting summary judgment in favor of UiPath, in its entirety.

Dated: April 3, 2024                              Respectfully submitted,

                                                  */s/ Tara Porterfield*
                                                  Tara Porterfield
                                                  Kelli Fuqua
                                                  tporterfield@littler.com
                                                  kfuqua@littler.com
                                                  LITTLER MENDELSON, P.C.
                                                  100 Congress Avenue, Suite 1400
                                                  Austin, Texas 78701
                                                  512.982.7250 (Telephone)
                                                  512.982.7248 (Facsimile)

                                                  ATTORNEYS FOR APPELLEE
                                                  UIPATH, INC.

## CERTIFICATE OF SERVICE

On April 3, 2024, pursuant to 5th Circuit Rule 25 concerning electronic filing, the undersigned certifies that the Brief of Appellee was electronically filed with the Clerk of the U.S. Court of Appeals for the Fifth Circuit, and a copy of same was served via email to Counsel for Appellant as follows:

John F. Melton
The Melton Law Firm, P.L.L.C.
925 Capital of Texas Hwy., Suite B225
Austin, Texas 78746
jmelton@jfmeltonlaw.com


*/s/ Tara Porterfield*
Tara Porterfield

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 6,363 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font 14-point type face.

Date: April 3, 2024

*/s/ Tara Porterfield*
Tara Porterfield

4876-2074-8722.4 / 104918-1005